# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROLANDO ESTEBAN SANCHEZ,<br><br>                          Petitioner,<br><br>v.<br><br>RAYMOND MADDEN,<br><br>                          Respondent. | Case No.: 21-cv-1072 MMA (MDD)<br><br>**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[Doc. No. 15] |

      Rolando Esteban Sanchez ("Petitioner") is a state prisoner proceeding *pro se* with a Petition for a Writ of Habeas Corpus filed under 28 U.S.C. § 2254. Doc. No. 1. Petitioner challenges the result of a 2019 prison disciplinary proceeding at Centinela State Prison in Imperial County in which he was found guilty of distribution of a controlled substance and the resultant loss of 180 days of good time credits. *Id.* at 1, 36–49. Petitioner claims his federal right to due process was violated through prison officials' failure to follow their own operational procedures for the handling of evidence resulting in the exclusion of evidence, in addition to falsification of statements and restriction on third person evidence, all of which resulted in the unconstitutional forfeiture of good time credits. *Id.* at 5–6.

Respondent has filed a motion to dismiss, *see* Doc. No. 15, in which he asserts the "Petition fails to allege a cognizable federal question to establish subject matter jurisdiction," and "does not invoke federal habeas corpus jurisdiction because the relief Sanchez seeks would not necessarily speed his release from confinement." Doc. No. 15-1 at 1–2. Petitioner has filed an opposition to the motion to dismiss, reiterating that California Department of Corrections and Rehabilitation ("CDCR") staff failed to comply with CDCR internal procedures as well as state and federal law and asserting the revocation of good time credits violated his state and federal constitutional right to due process, as well as his right to equal protection. *See* Doc. No. 19 at 1.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

Petitioner is serving an indeterminate term of 50 years to life along with a determinate term of 13 years following a 2009 Riverside County conviction and sentence in case number INF054364 for first degree murder with a firearm enhancement, arson of property, receiving stolen property, second degree burglary, carrying a loaded firearm, and receiving stolen property, along with enhancements for participation in a criminal street gang. *See* Doc. No. 16-1 at 1–5, Doc. No. 16-2 at 1.

On July 25, 2018, during a targeted search of Petitioner's and inmate Cardenas's shared cell at Centinela State Prison, correctional officers discovered "one clear plastic wrapped bindle containing a black tar-like substance in the upper shelving unit" and a "black color latex bindle" concealed in a coffee container labeled with Petitioner's name, which contained seven additional bindles, five of which "contained a black tar-like substance," one of which "contained white crystal like powder" and the other "contained what appeared to be tobacco." Doc. No. 1 at 14–15. On February 14, 2019, Centinela received written notification from the Department of Justice that a substance recovered during the search had tested positive for heroin and methamphetamine. *Id.* at 14. By a Rules Violation Report ("RVR") dated that same day, Petitioner was charged with a violation of Rule 3016(d), distribution of a controlled substance. *Id.* at 15.

On March 12, 2019, a disciplinary hearing was held at Centinela State Prison. *See id.* at 36–49. Petitioner attended the hearing. *Id.* at 37. Petitioner indicated he understood the charge against him, pleaded not guilty to the charge of distribution of a controlled substance, and made the following statement: "I had no knowledge of any contraband in the cell." *Id.* at 40. The hearing officer found Petitioner "Guilty as Charged based on a preponderance of evidence." *Id.* Petitioner was sentenced to 180 days loss of credits; 90 days loss of pay; 30 days loss of canteen privileges, phone privileges, yard recreation privileges, day room privileges, and package privileges, as well as property restrictions; 365 days suspension of visiting privileges; 730 days suspension of contact visiting privileges; mandatory drug testing within the next 90 days; and loss of family visits for 3 years upon conclusion of the imposed non-contact restrictions. *Id.* at 44–48. Petitioner was also referred to the classification committee for SHU term assessment, program review, and substance abuse treatment. *Id.* at 46.

Petitioner appealed this disciplinary decision through the prison administrative process and was denied at every level. *Id.* at 50–62. Petitioner thereafter filed a habeas corpus petition in the Imperial County Superior Court, which was denied in a reasoned decision. *Id.* at 104–13. Petitioner then filed a habeas corpus petition in the California Court of Appeal, which was also denied in a reasoned decision. *See* Doc. No. 16-3 at 147–51. Finally, Petitioner filed a habeas corpus petition in the California Supreme Court, *id.* at 1–154, which was summarily denied. *See* Doc. No. 1 at 116.

## II. DISCUSSION

"[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Meanwhile, "a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody." *Id.* at 499. While restoration of custody credits may fall within habeas review if it were to result in

immediate or earlier release from custody, "[i]f the invalidity of the disciplinary proceedings, and therefore the restoration of good-time credits, would not necessarily affect the length of time to be served, then the claim falls outside the core of habeas and may be brought in § 1983." *Nettles v. Grounds*, 830 F.3d 922, 929 (9th Cir. 2016) (en banc) (citing *Muhammad v. Close*, 540 U.S. 749, 754–55 (2004)).

Upon review, the Court finds Petitioner's case akin to the situation presented in *Nettles*. Like the petitioner in *Nettles*, Petitioner is serving a life sentence with the possibility of parole along with a determinate sentence term. *Compare* Doc. No. 16-1 at 1–5 and Doc. No. 16-2 at 1 *with Nettles*, 830 F.3d at 924–25. Both petitioners raise federal habeas corpus challenges to the loss of conduct credits and argue such loss impacts their potential parole date. *Compare* Doc. No. 1 at 5 *with Nettles*, 930 F.3d at 924–25. An en banc Ninth Circuit panel rejected Nettles's contention that his challenge to the validity of his RVR would favorably impact his parole hearing date and potential parole board ruling and was therefore cognizable on habeas review, reasoning "[s]uccess on the merits of Nettles's claims would not necessarily lead to immediate or speedier release because the expungement of the challenged disciplinary violation would not necessarily lead to a grant of parole," recognizing an RVR is "merely one of the factors" the parole board would consider in assessing a prisoner's suitability for parole. *Nettles*, 930 F.3d at 934–35. The *Nettles* Court noted that given the discretion placed in the parole board, invalidation of the challenged RVR would neither necessarily result in a favorable parole determination nor an earlier parole hearing and "[b]ecause success on [Petitioner's] claims would not necessarily lead to his immediate or earlier release from confinement, [Petitioner's] claim does not fall within 'the core of habeas corpus,' and he must instead bring his claim under § 1983." *Id.* at 935 (quoting *Skinner v. Switzer*, 562 U.S. 521, 535 n.13 (2011)).

Petitioner similarly fails to show that success on his own claims, potentially resulting in the invalidation of the RVR for distribution of a controlled substance and restoration of the 180 days of good time credits, would "necessarily affect the length of

time to be served." *Id.* at 929. Indeed, the instant record reflects Petitioner's minimum eligible parole date ("MEPD") does not appear to have been negatively impacted by the RVR. The February 14, 2019, RVR reflected Petitioner's MEPD at that time was January 27, 2061, while Petitioner's July 7, 2021, legal status summary reflects a MEPD date of November 19, 2060, as of September 11, 2020. *Compare* Doc. No. 1 at 14 *with* Doc. No. 16-2 at 1. Considering Petitioner's indeterminate life sentence and in view of *Nettles*, the Court is not persuaded that Petitioner's claims are cognizable on federal habeas review.

Rule 4 of the Rules Governing § 2254 Cases provides that: "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." Rule 4, 28 U.S.C. foll. § 2254. In this case, it is plain from the Petition Petitioner is not presently entitled to federal habeas relief because he has not alleged the potential restoration of custody credits would "necessarily" impact the fact or length of his custody. *Nettles*, 830 F.3d at 929; *see also Preiser*, 411 U.S. at 499. Accordingly, the Court **GRANTS** Respondent's motion to dismiss.

### III. POTENTIAL CONVERSION TO SECTION 1983

While Petitioner's claims are not cognizable in habeas review, the Ninth Circuit has provided that "a district court may construe a petition for habeas corpus to plead a cause of action under § 1983 after notifying and obtaining informed consent from the prisoner." *Nettles*, 830 F.3d at 936 ("'If the complaint is amenable to conversion on its face, meaning that it names the correct defendants and seeks the correct relief, the court may recharacterize the petition so long as it warns the *pro se* litigant of the consequences of the conversion and provides an opportunity for the litigant to withdraw or amend his or her complaint.'") (quoting *Glaus v. Anderson*, 408 F.3d 382, 388 (7th Cir. 2005)).

The Court declines to construe Petitioner's action as a § 1983 Complaint because it would expose Petitioner to the PLRA, which "require[s] prisoners to pay filing fees for the suits or appeals they launch" even if the prisoner qualifies to proceed in forma

pauperis and regardless of whether the action is ultimately dismissed, and which "also applies to costs awarded against prisoners when they are judgment losers." *Bruce v. Samuels*, 577 U.S. 82, 85–86 (2016); *see also* 28 U.S.C. §§ 1915(b)(1)–(2) and (f)(2). The relevant fee statute provides: "The clerk of each district court shall require the parties instituting any civil action, suit or proceeding in such court, whether by original process, removal or otherwise, to pay a filing fee of $350, except that on application for a writ of habeas corpus the filing fee shall be $5." 28 U.S.C. § 1914(a). In addition to the $350 civil filing fee, there is also an additional $52 "[a]dministrative fee for filing a civil action, suit, or proceeding in a district court[,]" which "does not apply to applications for a writ of habeas corpus or to persons granted in forma pauperis status under 28 U.S.C. § 1915." *See* 28 U.S.C. §1914 (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14).

Petitioner may decline to incur such fees and costs to pursue claims that may provide little chance for success given only "some evidence" is required to support the findings made in a prison disciplinary hearing and limitations on presentation of witnesses and evidence gathering is permissible depending on the situation. *See, e.g., Superintendent v. Hill,* 472 U.S. 445, 457 (1985) (finding that a disciplinary hearing satisfied due process even where "the evidence in this case might be characterized as meager," reasoning "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary" and noting "[t]he Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing"); *see also Wolff v. McDonnell*, 418 U.S. 539, 556, 563, 566 (1974) ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply" and due process only requires a prisoner to be provided with "advance written notice of the claimed violation and a written statement of the factfinders as to the evidence relied upon and the reasons for the

disciplinary action taken," while "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence"); *see also Sandin v. Conner*, 515 U.S. 472, 487 (1995) (finding that the result of prison disciplinary action did not deprive prisoner serving indeterminate life sentence of protected liberty interest given the "myriad of considerations" going into a parole board decision, reasoning "[t]he chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause").

For these reasons, the Court declines to convert the instant Petition to a § 1983.

## IV. CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C.A. foll. § 2254. This requirement includes a district court's decision based on procedural grounds. *See Buck v. Davis*, 137 S. Ct. 759, 777 (2017) ("[A] litigant seeking a COA must demonstrate that a procedural ruling barring relief is itself debatable among jurists of reason; otherwise, the appeal would not 'deserve encouragement to proceed further.'") (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The Court finds issuing a certificate of appealability is not appropriate in this instance as reasonable jurists would not find debatable the Court's conclusion that Petitioner's claims are not cognizable on federal habeas review, nor does the Court find any of the issues presented deserve encouragement to proceed further. *See* 28 U.S.C. 2253(c); *Slack*, 529 U.S. at 484. Accordingly, the Court **DENIES** a certificate of appealability.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Respondent's motion to dismiss, **DISMISSES** the Petition for failure to state a cognizable claim on habeas corpus, and **DENIES** a Certificate of Appealability. If Petitioner wishes to challenge the conditions of his confinement, he must file a new civil rights complaint pursuant to 42

U.S.C. § 1983, which will be given a new case number. The Clerk of Court is directed to send Petitioner a blank 42 U.S.C. § 1983 civil rights complaint form together with a copy of this Order.

**IT IS SO ORDERED**.

Dated: November 30, 2021

*/s/ Michael M. Anello*

HON. MICHAEL M. ANELLO
United States District Judge